# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:19-cv-00051-MR

DONNA ELAINE MACK,

        Plaintiff,

vs.

ANDREW SAUL, Commissioner of Social Security,

        Defendant.

**MEMORANDUM OF DECISION AND ORDER**

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 8] and the Defendant's Motion for Summary Judgment [Doc. 10].

## I. PROCEDURAL HISTORY

The Plaintiff, Donna Elaine Mack ("Plaintiff"), filed an application for disability insurance benefits under Title II and Title XVIII of the Social Security Act (the "Act"), alleging an onset date of April 30, 2010. [Transcript ("T.") at 125]. The Plaintiff's application was denied initially and upon reconsideration. [T. at 56, 68]. Upon Plaintiff's request, a hearing was held on March 2, 2018 before an Administrative Law Judge ("ALJ"). [T. at 24-55]. On April 13, 2018, the ALJ issued a written decision denying the Plaintiff

benefits, finding that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date of April 30, 2010, through the date last insured, September 30, 2015. [T. at 8-23]. The Appeals Council denied the Plaintiff's request for review on December 13, 2018, thereby making the ALJ's decision the final decision of the Commissioner. [T. at 2-4]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla

of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability.

20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular

4

and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; <u>Mascio</u>, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. <u>Id.</u> Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. <u>Id.</u>; <u>Hines v. Barnhart</u>, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; <u>Mascio</u>, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. <u>Id.</u> Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fourth step.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, April 30, 2010, through her date last insured, September 30, 2015. [T. at 16]. At step two, the ALJ found that the Plaintiff has severe impairments, including: alkaptonuria with osteopenia, osteoarthritis, and degenerative changes of the spine. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [T. at 16-17]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, had the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except she was limited to the following: can stand or walk 30 minutes without the need to change position; can sit 30 minutes without the need to change position; could perform no climbing or crawling; and no more than occasional pushing or pulling of arm or leg controls.

[T. at 25].

At step four, the ALJ identified Plaintiff's past relevant work as an insurance and risk manager, and as a dentist. [T. at 19]. The ALJ then found, based upon the testimony of the VE, that considering the Plaintiff's RFC and the physical demands of Plaintiff's past relevant work as an insurance and risk manager, that the Plaintiff is able to perform her past relevant work of an

6

insurance and risk manager as it was actually performed and as it is generally described. [T. at 19-20]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from April 30, 2010, the alleged onset date, through September 30, 2015, the date last insured. [T. at 20].

## V.  DISCUSSION[1]

As one of her assignments of error, the Plaintiff argues that the "ALJ erred in the formulation and application of the RFC, both under agency [rules] and the ruling in <u>Mascio</u>." [Doc. 8-1 at 3].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; <u>see</u> <u>also</u>

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions."  20 C.F.R. § 416.945.

7

Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

The RFC assessment is formulated in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

Here, in formulating the RFC, the ALJ recites, without any analysis, the Plaintiff's testimony before concluding:

> After careful consideration of the evidence, the undersigned finds that the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity,

persistence and limiting effects of these symptoms <u>are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision</u>.

[T. at 26-27 (emphasis added)]. The ALJ, however, does not provide any discussion or analysis concerning what evidence is inconsistent with the Plaintiff's allegations. Instead, the ALJ proceeds as follows:

> Concerning the [Plaintiff's] alkaptonuria with osteopenia, osteoarthritis, and degenerative changes of the spine, Dr. Walter Chmelewski, MD, the [Plaintiff's] treating doctor at Triangle Arthritis and Rheumatology Associates, advised by letter dated December 4, 2017 that the [Plaintiff] had been followed for 10 plus years with a diagnosis of alkaptonuria which results in calcifications in areas such as the discs in the spinal area and osteoarthritis at an early age. He indicated that as calcifications increase, some of the physical abilities decrease, but he did not specify limitations for the [Plaintiff]. The [Plaintiff's] doctor reported that the focus of management was to modify exercise regimens and daily activities and to treat pain and inflammation in the areas. He stated that the office had used medications and physical therapy as well as referral to orthopedics and monitoring of the condition with x-rays. The [Plaintiff's] doctor specified that she had complied with plans and recommendations over the years. Her treatment notes show that the [Plaintiff] was followed by her primary care providers at Wake Internal Medicine and by Triangle Arthritis and Rheumatology Associates for medical management of her impairments. The [Plaintiff] had DEXA scans during the period at issue which indicated bone density loss and osteopenia. She had imaging studies of the left knee which revealed mild patellofemoral arthritis, but imaging studies of the left

9

hip and left femur did not indicate any abnormalities. The [Plaintiff] had x-rays of the lumbar spine which showed endplate spurring and sclerosis with stable calcium hydroxyapatite depositions in several discs. During physical examinations, she demonstrated some tenderness or stiffness of the lumbar spine with only some limitations on occasion. The [Plaintiff] showed some tenderness and crepitus of the right shoulder on occasion but was noted to still have very good range of motion. Although she reported pain and showed mild osteoarthritis on imaging studies of the left knee, her hands, wrists, elbows, knees, and ankles generally moved well and were unremarkable throughout most of the period at issue. It was further recorded that her hips moved well and that there were no problems with gait. She was treated conservatively as described above, and her treatment providers at Triangle Arthritis and Rheumatology Associates indicated that she was stable clinically.

[T. at 18]. The ALJ then summarily concludes that:

> The evidence shows that the [Plaintiff] was able to stand, move about, and use her arms, hands, and legs in a satisfactory manner within the assigned residual functional capacity (Exhibits 1F, 2F, and 3F). The undersigned has adequately considered and accommodated the [Plaintiff's] severe combination of impairments in the residual functional capacity by limiting her to light [work] with the following additional limitations: can stand or walk 30 minutes without the need to change position; can sit 30 minutes without need to change position; could perform no climbing or crawling; and no more than occasional pushing or pulling of arm or legs control.

[T. at 18-19].

The ALJ's explanation is lacking in the analysis needed for meaningful review. The ALJ describes in general terms the evidence of record but it is unclear as to *what* evidence is *specifically* referred to and *why* the evidence supports his conclusions. Further, despite Plaintiff's RFC reflecting multiple limitations that appear related to her symptoms associated with severe impairments, including pain, the ALJ fails to provide any discussion of these limitations. The ALJ never explains how he concluded — *based on the evidence of record* — that the Plaintiff could have actually performed the tasks required of light work, nor did the ALJ explain how the additional physical limitations stated in the RFC account for the Plaintiff's severe impairments. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) ("The ALJ concluded that [Plaintiff] could perform "medium work" and summarized evidence that he found credible, useful, and consistent. But the ALJ never explained how he concluded — *based on this evidence* — that [Plaintiff] could actually perform the tasks required by "medium work," such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours."). Moreover, the ALJ's statement that he has "adequately considered and accommodated the [Plaintiff's] severe combination of impairments" in assessing the Plaintiff's RFC, is insufficient to satisfy the requirement of Social Security Ruling 96-8p that the ALJ's

decision "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. Therefore, the ALJ failed to build an "accurate and logical bridge" from the evidence of record to the RFC conclusions.[3]

A reviewing court cannot be "left to guess about how the ALJ arrived at her conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court

---

[3] Compounding the failure to adequately discuss and analyze the evidence of record in assessing the Plaintiff's physical impairments, the ALJ also fails to identify any medical opinion given significant weight that supports his RFC determination. The ALJ, in his only assignment of weight to any medical opinions, gave "some weight" to the State Agency consultants' assessments. [T. at 19]. However, contrary to the ALJ's determination, the State Agency consultants did not limit the Plaintiff to "light work" for the entire period at issue and did not limit the Plaintiff to sitting or walking for only 30 minutes at a time without the need to change position. [See T. at 63-64, 75 ]. As the State Agency consultants' opinions were the only opinions assigned any weight, the ALJ accorded no opinion in the Plaintiff's record "persuasive weight," "great weight," "greatest weight," or "controlling weight" such that it would support his RFC determination. As such, neither of those opinions were considered by the ALJ to be of sufficient weight to support his assessment of the Plaintiff's RFC. "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, (emphasis added). As a result, without the ALJ providing the necessary explanation as to why the opinions were not adopted, the Court cannot say the RFC is supported by substantial evidence.

cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports [her] decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted).

## VI. CONCLUSION

Because this Courts lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. Upon remand, the ALJ should conduct a proper function-by-function analysis of the Plaintiff's exertional and non-exertional limitations, narratively discussing all of the relevant evidence, and specifically explaining how he reconciled that evidence (both supportive and contradictory) to his conclusions.

In light of this decision, the Plaintiff's other assignment of error need not be addressed at this time but may be addressed by her on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 8] is **GRANTED** and the Defendant's Motion for Judgment for Summary Judgment [Doc. 10] is **DENIED**. Pursuant to the

power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 26, 2019

Martin Reidinger
United States District Judge